UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

NACIO SYSTEMS, INC.,                         No. 08-10078

                                  Debtor(s).
_____/

NACIO INVESTMENT GROUP, LLC,

                                  Plaintiff(s),

       v.                                       A.P. No. 08-1098

NACIO SYSTEMS, INC.,

                                  Defendant(s).
_____/

Memorandum After Trial
_____

      In 2002, a company known as Nacio Systems, Inc., a California corporation ("Nacio California"), filed an Chapter 11 petition in this court. That case culminated in a confirmed plan of reorganization in 2003. The means for performance of that plan was up to $500,000.00 in financing to be supplied by plaintiff Nacio Investment Group, LLC ("NIG"). The plan provided that NIG would have a lien on the reorganized debtor's assets, including its leasehold improvements, all personal

1

property, intellectual property, equipment, receivables, and customer accounts.[1]

After confirmation of the Nacio California plan, NIG loaned it over $800,000.00. Other than the plan itself, there are no other documents granting NIG's security interest.

NIG has filed four financing statements with the Secretary of State California and two with the Secretary of State of Nevada. In all of the financing statements, the collateral is described as "a lien on all leasehold improvements (except those subject to any mechanics liens currently under litigation), all personal property, intellectual property, equipment, customer accounts and receivables."

In 2005, the reorganized Nacio California entered into an asset purchase agreement by which it transferred all of its assets to the current debtor, a Nevada corporation which also took the name Nacio Systems, Inc. To avoid confusion, the court refers to this corporation as "Nacio Nevada." Nacio Nevada also assumed all of Nacio California's obligations. The ownership of Nacio Nevada is unrelated to that of Nacio California.

Nacio Nevada filed the current Chapter 11 case on January 18, 2008. NIG has filed a secured claim for about $1 million. The issue in this adversary proceeding is the nature and extent of its security interest. Nacio Nevada argues that NIG is wholly unsecured because there is no grant to it of a security interest. It further argues that even if the confirmed plan of Nacio California grants a security interest, such an interest is limited to assets existing when the Nacio California plan was confirmed. NIG argues that this case is a "virtual continuation" of the Nacio California case such that Nacio is Nevada may not be a debtor in bankruptcy. It also argues that it would be "inequitable to limit or circumscribe" its lien because its loans saved the business.

The court finds little merit in NIG's arguments. The "equity" argument is completely without basis in the law; equitably, assets of a debtor ought to be distributed equally to all creditors. The rights of secured creditors are honored in bankruptcy, despite the inequitable result, but only if all the requirements for perfection have been met. There is no basis in the law for finding an "equitable"

---

[1] The debtor's business is providing data storage and internet services.

2

security interest enforceable against a debtor in bankruptcy.

Likewise, the "virtual continuation" argument is less than compelling. In order for the court to dismiss a second filing as a continuation of a prior filing, the moving party must show that the debtor is the same a prior debtor and the debts are the same debts dealt with in the prior case, such that the second case is "akin to modifying the previous plan." *In re Northampton Corp.*, 39 B.R. 955, 956 (Bankr.E.D.Pa.1984). In this case, NIG's argument seems predicated on the fact that Nacio Nevada chose to use the word "Nacio" as part of its name, but NIG did that also. The equity ownership of Nacio Nevada is entirely different from Nacio California, and NIG has made no showing that its debt structure is anything like that of Nacio California's. It appears that NIG, Nacio Nevada's largest creditor, had no voting rights in Nacio California's plan.[2] NIG accordingly has not met its burden of showing the court that this case is a bad faith continuation of the Nacio California case.[3]

Although Nacio Nevada is not the same entity as Nacio California, it is a successor to Nacio California by virtue of its assumption of its obligations. Thus, NIG has a valid security interest is at least some of Nacio Nevada's assets if it had a valid security interest in Nacio California's assets when Nacio Nevada acquired them.

Nacio Nevada argues that since NIG has no security interest, the most it ever had by virtue of the Nacio California plan was a judicial lien which was not perfected because NIG filed the wrong form with the secretaries of state. The court disagrees. There is no magic form of security agreement. White & Summers, **Uniform Commercial Code**, § 30-1b (5th ed., 2002). The confirmed plan in the

---

[2]There is no evidence that NIG had a prepetition claim in the Nacio California case. Most of its claim arose after confirmation of the Nacio California plan. While some advances may have been made during that case, those advances would have been treated as administrative expenses and not prepetition debts entitling NIG to a vote on the plan. Thus, this is not a case where the same debtor is seeking to deal with the same debts a second time.

[3]Moreover, a finding of "virtual continuation" is not something a court ought to make lightly, as potential buyers of assets would be chilled if there is any sort of risk that the buyer, by virtue of the purchase, might be barred from itself seeking bankruptcy relief thereafter.

3

Nacio California case is signed by the debtor, clearly intends that NIG have a security interest, and clearly describes the collateral. "A reorganization plan resembles a consent decree and therefore, should be construed basically as a contract." *Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir.1993) contract." The court accordingly concludes that the plan gave NIG an enforceable interest in the collateral.

Having determined that the plan is sufficient to constitute a security agreement, there remains the issue of the extent of NIG's security interest. As Nacio Nevada points out, there is no description of after acquired property. In addition, the plan clearly specified that the loan amount was up to a $500,000.00 maximum.

The court agrees with Nacio Nevada that since a mechanic's lien attaches to an entire work of improvement and not just the work performed by the lienholder, no security interest in Nacio California's leasehold improvements as they were all subject to a mechanic's lien claim.

The court disagrees with Nacio Nevada to the extent it argues that California Commercial Code § 9204 provides that a security interest does not attach to after-acquired property unless the security agreement has an after-acquired property clause. Whether or not a security agreement creates an interest in after acquired property is a question of fact, largely centering around the nature of the collateral. Thus, in most cases there is a security interest in after-acquired receivables even without an express after-acquired clause in the agreement, but no security interest in after-acquired equipment. *Stoumbos v. Kilimnik,* 988 F.2d 949, 956 (9th Cir. 1993).[4] Since there was neither an after-acquired property clause nor convincing evidence of intent to have an interest in after-acquired equipment, NIG's security interest is limited to equipment existing at the time Nacio California's plan was confirmed. Its interest in receivables, however, extends to any existing when it sold its assets to Nacio Nevada in 2005.

NIG does not contest that it never filed a claim of its security interest with the United States

---

[4]*Stoumbos* interpreted Washington law. The law does not appear to be different in California.

4

Copyright Office. Accordingly, any security interest it may have in any registered copyrights is avoidable.

For the foregoing reasons, the court concludes that NIG has a security interest in any equipment Nacio California had upon confirmation of its plan in 2003[5] which is still owned by Nacio Nevada and any outstanding receivables of Nacio California existing when Nacio Nevada purchased Nacio California's assets in 2005, and that this collateral secures a debt of $500,000.00 plus accrued interest.

The court will give NIG a chance to properly determine what equipment is subject to its lien and the value thereof in further proceedings. As to all other issues, the above findings and conclusions shall be deemed to be without substantial controversy. No judgment will be entered until the rights of all parties have been determined.

Counsel for NIG shall give notice to all parties to this adversary proceeding of a new scheduling conference to be held on June 22, 2009, at 2:00 P.M.

Dated: May 13, 2009

                                                  Alan Jaroslovsky
                                                  U.S. Bankruptcy Judge

---

[5] NIG attempted to "prove" what equipment still exists today by dumping thousands and thousands of pages of equipment inventory on the court from now and 2003 on the court, evidently expecting the court to devote the next five or six years of its term in office to comparing the two. The court expects a party-suppled witness to do this sorting, and in the absence of such testimony the court will determine who has the burden of proof and rule against that party.

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

6